Gene Goziker
2971 S. Fairview St. #A
Santa Ana, CA 92704
213.378.3998
ggoziker@outlook.com
Plaintiff in Pro Per

FILED
CLERK, U.S. DISTRICT COURT

JUN 1 6 2023

CENTRAL DISTRICT OF CALIFORNIA
BY   DVE

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

GENE GOZIKER, an individual

        Plaintiff,

v.

WELLS FARGO BANK, a corporation,

        Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 8:23-cv-00860 FWS (DFMx)

**PLAINTIFF'S COMPLAINT (AMENDED)**

Assigned to: Hon. Fred W. Slaughter
Courtroom 10D, Santa Ana, CA

Complaint Filed: April 7, 2023
(Removed from Orange County Superior Court Case No. 30-2023-01317310 on May 12, 2023)

## STATEMENT OF FACTS

1. On January 30, 2017, I borrowed $453,000 from Wells Fargo to refinance my primary residence located at 16 Arese Aisle, Irvine, CA 92606, which I initially purchased on May 30, 2013.

2. IRINA A. GOZIKER, my spouse at the time, was not officially employed since 2011, so the mortgage was always in my name only and never had any co-signers or other borrowers.

3. At the origination of this loan with Wells Fargo I was a 39 years old married man, father of two (2) minor daughters Michelle Grace Goziker (DOB 12/30/2005) and Vivienne Leah Goziker (DOB 08/24/2012), self-employed as Risk Management consultant at *Experian* in Costa Mesa, CA, with the contract that was originally intended for 6 months and 2 possible extensions (I worked at Experian for total of 18 months as contingent employee).

PAGE 1

PLAINTIFF'S COMPLAINT

4. On August 27, 2017, my ex-wife, IRINA A. GOZIKER, attempted to murder me, so I had no choice other than to leave the family house.

5. My then 5-years old daughter, Vivienne Leah Goziker, asked me not to call the police because she "does not want Mama to go to jail." I wanted my children to have a Mother, so instead, I left the family for my own safety. I did not want IRINA A. GOZIKER to be jailed as well, so waited a long time before filing the police report with Irvine Police Department (**Exhibit A**).

6. Several weeks after my forced departure from my own home, in October of 2017, I started to work full-time as Risk Manager at City National Bank.

7. The profession of Risk Manager is very unrewarding because it creates continuous conflict of interest when an honest Risk Manager is risking his job security when he delivers bad news to his superiors or refuses to participate in corruption (see recent Silicon Valley Bank downfall). Several times in my career I chose to walk away from such risks and rather find new employment than put my signature under something that was not true.

8. In 2019 my manager at City National Bank demanded from me to sign off on risk assessments that simply never happened – I refused to compromise; I've had enough. My reputation and ability to sleep well at night became more important than making money, which in this case were dirty. In August of 2019 I was wrongfully terminated from CNB for doing my job honestly.

9. I hired an attorney at *Clark Employment Law* and filed for unemployment benefits with California EDD (**Exhibit B**).

10. I could no longer continue servicing the mortgage with Wells Fargo due to this new financial hardship and by January 29, 2020, the loan went in default.

11. In March of 2020 the entire world and the USA was hit with the COVID pandemic, industries and countries shut down and all this time during the COVID pandemic of 2020-2021 my employment status was not stable. Like

PLAINTIFF'S COMPLAINT

many others, I was only able to find some temporary projects during COVID pandemic and struggled to find meaningful employment.

**12.** I became insolvent and Wells Fargo initiated the foreclosure process on my family house at 16 Arese Aisle, Irvine, 92606, where my two children stayed with their mother during the COVID pandemic and after I left for safety.

**13.** In September of 2020, I offered IRINA A. GOZIKER to settle our divorce in such a way that would still allow the kids to keep living in the family house at 16 Arese Aisle in Irvine; I left my half of the house to my minor children, Michelle Grace Goziker and Vivienne Leah Goziker in exchange for Irina's promise to refinance the property under her name alone.

**14.** In late 2020, I was able to find a 6-months long contract with Protiviti to start their project on 01/19/2021. The job offer letter specifically stated that my employment is guaranteed for 6 months only ending in June of 2021.

**15.** I called Wells Fargo and let them know that I can make the payments again.

**16.** My divorce was finalized on January 11, 2021, and I was no longer the owner of the property at 16 Arese Aisle, but my name remained as the only borrower on the mortgage account with Wells Fargo.

**17.** In a desperate attempt to save the former family house from foreclosure because my two minor children still resided in it, I sent the offer letter from Protiviti and several paystubs to Wells Fargo and applied for modification.

**18.** As of June 2021, the mortgage account was no longer in foreclosure status because of the initiated loan modification process, which in turn was guaranteeing at least three (3) more months of the government-sponsored forbearance allowance.

**19.** Wells Fargo denied me this opportunity to stay in forbearance while looking for stable employment and aggressively pushed for immediate modification while threatening that my kids will end up on the street.

PLAINTIFF'S COMPLAINT

**20.** According to Wells Fargo's own policies and procedures, loan modification terms are subject to negotiation, which I was not allowed to do at all.

**21.** On June 11, 2021, I lost my employment with Protiviti in accordance with the terms of original employment contract but was able to continue with another project at the *National Bank of Pakistan* for several more weeks.

**22.** On July 29, 2021, I was let go from that project too as they claimed that the bank no longer needed a Risk Manager.

**23.** I lost all sources of income and applied for unemployment benefits with the State of California Employment Development Department and started collecting unemployment insurance again (**Exhibit C**).

**24.** In early August of 2021, I called Wells Fargo's Home Preservation Specialist, TREY COOPER at 877-458-8417 ext. 1335026959, to let her know that I am no longer employed and have no income and, therefore, would not be able to service the modified mortgage account. Audio records from all our conversations must be provided by Defendant during the discovery just like in Zubulake v. UBS Warburg LLC, 220 F.R.D. 212.

**25.** Instead of taking into consideration Plaintiff's lack of employment and new additional financial hardship, Wells Fargo initiated a separate channel of communication with Plaintiff's ex-wife, who is not even a co-signer on the loan and is not financially responsible for the debt.

**26.** On August 12, 2021, I received an email alert that my mailing address with Wells Fargo has been changed to 16 Arese Aisle, Irvine, CA 92606.

**27.** I called Wells Fargo on August 13, 2021, and demanded explanations, but they refused to provide any justification to unauthorized change of address.

**28.** On August 26, 2021, I called Wells Fargo again and warned Stacey LaMarre, Case Specialist in the Home Lending Executive Office, that I suspect fraud by my ex-wife and demanded that Wells Fargo initiate a thorough investigation to determine how this became possible.

PAGE 4

PLAINTIFF'S COMPLAINT

**29.** I believe this was based on gender-based bias that TREY COOPER had developed against me because I am a man who was divorced, so she sympathized with another woman, not knowing that IRINA A. GOZIKER almost killed me and that I was a good husband and father.

**30.** TREY COOPER fabricated the income qualification documents while already knowing that I do not have any income at all other than unemployment benefits and intentionally pushed the modification to conclusion thinking that she is helping IRINA A. GOZIKER to avoid foreclosure instead of putting a stop to that process because of my unemployment.

**31.** On August 20, 2021, my ex-wife's attorney, JACLIN AWAD (State Bar of California ID# 242174), filed a Declaration in the Superior Court of California, Lamoreaux Justice Center, Family Law Case #17D007559 where she attached as an Exhibit a document called "The Loan Modification Agreement" that was originated by Wells Fargo on July 22, 2021 (**Exhibit D**).

**32.** I received the notice of this declaration only in early September by mail and was absolutely shocked because I never received the above-mentioned letter from Wells Fargo even though the address on the document is listed as 2971 S. Fairview Street, Santa Ana, CA 92704, and for some unknown reason also had my ex-wife's name on it, while she is neither the co-borrower, nor was she ever residing in Santa Ana, which is my Mother's residence. I filed an Identity Theft Report # 36403282 with USPS for this incident (**Exhibit E**).

**33.** On August 21, 2021, my ex-wife, IRINA A. GOZIKER, signed off on Loan Modification Agreement with Wells Fargo, while she is not even a co-signer, and while I was still unemployed and was collecting the EDD benefits.

**34.** In their Request for Order filed on July 29, 2021, same day when I lost all sources of income, Ms. JACLIN AWAD and my ex-wife IRINA GOZIKER demanded Judge Nathan Vu to force me into modification agreement with

PAGE 5

PLAINTIFF'S COMPLAINT

Wells Fargo even though I was unemployed at the time and did not even receive the letter from Wells Fargo which they somehow obtained from TREY COOPER.

35. On September 13, 2021, Wells Fargo responded to my complaint about unauthorized access to my account by my ex-wife and her attorney. In this letter (**Exhibit F**), Wells Fargo admits that on August 12, 2021, they spoke to IRINA A. GOZIKER on the phone and that she changed address in Wells Fargo's system. Wells Fargo also confirmed in the letter that my ex-wife was not allowed to make this update, but WELLS FARGO BANK still did it, which is called <u>mail-fraud</u> that caused me significant economic and non-economic damages (<u>940. 18 U.S.C. SECTION 1341</u>).

36. On September 24, 2021, Judge Vu issued an order that required me to modify the loan with Wells Fargo, in complete disregard to the circumstances of the situation (**Exhibit G**).

37. TREY COOPER and WELLS FARGO BANK determined my faith by <u>conspiring with my ex-wife's attorney</u> and put me into financial slavery for the next 40 years with the predatory lending scheme.

38. In that Loan Modification Agreement, Wells Fargo falsified information for the Borrower(s) by fabricating the Deed of Trust as if there were two (2) borrowers, GENE GOZIKER AND IRINA A. GOZIKER, MARRIED, while in reality Wells Fargo was perfectly aware that there was no second borrower whatsoever - they never even ran my ex-wife's credit; nor were we married by that time.

39. In the modification agreement from July 22, 2021, Wells Fargo demanded that I sign it by August 6, 2021. <u>At that point I had no income, and they knew it</u>!

40. If Wells Fargo had not committed the mail-fraud by sending confidential information to my ex-wife's attorney instead of me, I am certain that Judge Vu wouldn't have made his illogical order to put such debt on unemployed man.

PAGE 6

41. Wells Fargo does not follow any rules of banking and is phenomenally dishonest and preferential towards women. For example, already after the modification was completed, in February of 2022, Wells Fargo realized that there is an Escrow Overage in the amount of $2,373.07, and they issued the check on my name only, but somehow still allowed my ex-wife to cash the check which she picked up from my address at 2971 S. Fairview St. #A, Santa Ana, CA 92704. Wells Fargo does not have any controls to protect its honest customers and is biased towards divorced men (**Exhibit H**).

42. I am still unemployed today, looking for a meaningful ethical job and collecting EDD benefits. I have no means to service this mortgage account.

43. The fact that Wells Fargo committed mail-fraud simply because I am a man – is devastating.

44. The fact that Wells Fargo engaged in predatory lending fraud simply because they wanted to extract the maximum value for itself without regard for my ability to repay the loan that I cannot afford and because they wanted to enslave me for the next 40 years only because I am a divorced man – is sick.

## CLAIMS

**(1) PURSUANT TO 940. 18 U.S.C. § 1341:**

On August 12, 2021, Wells Fargo has engaged in mail-fraud when TREY COOPER, who worked as Home Preservation Specialist in the above-mentioned bank, devised an intentional scheme to perform specified fraudulent act against Plaintiff by mailing to my ex-wife the confidential information pertaining to loan modification agreement. WELLS FARGOA used the mail for the sole purpose of attempting to execute the fraud scheme designed my my ex-wife's attorney, JACLIN AWAD, that resulted in major economic and non-economic damages to Plaintiff (see Schmuck v. United States, 489 U.S. 705, 721 n. 10 (1989); see also Pereira v. United States, 347

PLAINTIFF'S COMPLAINT

U.S. 1, 8 (1954) ("The elements of the offense of mail fraud under . . . §
1341 are (1) a scheme to defraud, and (2) the mailing of a letter, etc., for the
purpose of executing the scheme."); Laura A. Eilers & Harvey B. Silikovitz,
Mail and Wire Fraud, 31 Am. Crim. L. Rev. 703, 704 (1994)

**(2) PURSUANT TO 12 U.S.C. § 5531, § 1601, OCC 12 CFR Parts 7, 34:**
The Wells Fargo Bank has committed multiple violation of truth in lending
requirements – such as fabrication income qualifications and pretending that
there are more than one (1) borrowers on the loan, as well as incorrectly
stating marital status – and other multiple violations of consumer practices
that caused numerous and excessive damages to Plaintiff.

**(3) PURSUANT TO 15 U.S. Code § 1691 AND ECOA:**
The Wells Fargo Bank has committed major violations in lending practices
by discriminating against Plaintiff based on his gender.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against the Defendant as
follows:

    (1) For actual damages according to proof.

    (2) For special damages according to proof.

    (3) For consequential damages according to proof.

    (4) For restitution and/or disgorgement of ill-gotten gains, such as
assigned debts, fees, etc.

    (5) For injunctive relief enjoining the Defendant from engaging in acts
of unlawful business practices, etc.

    (6) For judicial declaration that:

        (a) Wells Fargo Bank lacks controls over its Home Lending.

(b) Wells Fargo Bank is practicing predatory lending.

(c) Wells Fargo Bank is biased towards men and discriminates against divorced men specifically.

(7) For interest at the maximum legally permissible rate from the date of the initial misconduct.

(8) For compensatory sanctions in the amount equal to economic and non-economic damages caused to Plaintiff.

(9) For punitive sanctions caused to Plaintiff and his children.

(10) For fees and costs incurred herein, and

(11) For such other and further relief as the Court deems just and proper.

Dated: June 16, 2023                    By: _____

                                        GENE GOZIKER
                                        Plaintiff in Pro Per

PAGE 9

PLAINTIFF'S COMPLAINT

Exhibits

*Exhibit "A"*

**Case Number: IPD-22-05996**
**Report Number:** IPD-22-05996-001



## IRVINE POLICE DEPARTMENT



# CASE REPORT

### ADMINISTRATIVE

**LOCATION OF OCCURRENCE**
16 Arese Aisle, IRVINE, CA 92606

| | UNIVS | 1 | 227 |

**DATE(S) OCCURRED**
8/27/2017 1:00:00 PM (Sunday)    TO    ()

**DATE/TIME REPORTED**
5/5/2022 5:55:38 PM

| RECORDINGS | IBR DISPO | COURTESY REPORT | DICTATION NUMBER |
|---|---|---|---|
| BWC | Active | No | |
| INTOX REPORT | ID THEFT RELATED | GANG RELATED | |
| | | No | |

**ASSOCIATED CASE NUMBER(S)**

**SEND COPIES TO**

**SUMMARY AND WORKABLE INFO**
RP REPORTED DV INCIDENT HAVING OCCURRED IN 2017.

**FTO (IF APPLICABLE)**

| APPROVED BY | APPROVAL DATE/TIME |
|---|---|
| 260 - Lipscomb, Russell (Dwayne) | 5/5/2022 8:48:19 PM |

CONTROLLED DOCUMENT
DUPLICATION OR REISSUANCE CONTROLLED BY LAW
California Government Code 6254

| REPORTING OFFICER | ENTERED DATE | PRINTOUT CREATED | PAGE |
|---|---|---|---|
| 508 - Irwin, Timothy | 5/5/2022 6:33:11 PM | 11/5/2022 5:18:42 PM | 1 of 9 |

**Case Number:** IPD-22-05996
**Report Number:** IPD-22-05996-001

OFFENSE(S)

SUSPECT(S)

ARRESTEE(S)

CONTROLLED DOCUMENT
DUPLICATION OR REISSUANCE CONTROLLED BY LAW
California Government Code 6254

| REPORTING OFFICER | ENTERED DATE | PRINTOUT CREATED | PAGE |
|---|---|---|---|
| 508 - Irwin, Timothy | 5/5/2022 6:33:11 PM | 11/5/2022 5:18:42 PM | 3 of 9 |

**Case Number: IPD-22-05996**
**Report Number:** IPD-22-05996-001

<u>VICTIM(S)</u>

CONTROLLED DOCUMENT
DUPLICATION OR REISSUANCE CONTROLLED BY LAW
California Government Code 6254

| REPORTING OFFICER | ENTERED DATE | PRINTOUT CREATED | PAGE |
|---|---|---|---|
| 508 - Irwin, Timothy | 5/5/2022 6:33:11 PM | 11/5/2022 5:18:42 PM | 4 of 9 |

Case Number: **IPD-22-05996**
Report Number: IPD-22-05996-001

**OTHER WITNESS/ENTITY/RELATED PARTY**

**OTHER PARTY**

| PARTY CONFIDENTIAL | No | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| O1 | Reporting Party: Goziker, Yevgeniy | | | | | | | | |

| SEX | RACE | DOB | AGE | HEIGHT | WEIGHT | HAIR | EYES | DLN | DL STATE |
|---|---|---|---|---|---|---|---|---|---|
| Female | Other | 6/21/1978 | 39 | 5' 6" | 165 | Blond | Blue | F5454449 | California |

| ALIAS | | ALIAS DOB | | ALIAS SSN | |
|---|---|---|---|---|---|
| | | | | | |

| ADDRESS TYPE | ADDRESS |
|---|---|
| Home | 2971 S Fairview #a, Santa Ana, CA  92704 |

| PHONE TYPE | PHONE NUMBER |
|---|---|
| Mobile | (213) 378-3998 |

| EMAIL/SOCIAL MEDIA ADDRESS |
|---|
| gene.goziker@gmail.com |

| SCARS / MARKS / TATTOOS | LOCATION | DESCRIPTION |
|---|---|---|
| | | |

| EMPLOYER/SCHOOL | ADDRESS | OCCUPATION/GRADE |
|---|---|---|
| Unemployed | , | |

| ADDITIONAL INFORMATION |
|---|
| |

**OTHER PARTY**

| PARTY CONFIDENTIAL | No | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| O2 | Other Individual: Goziker, Irina | | | | | | | | |

| SEX | RACE | DOB | AGE | HEIGHT | WEIGHT | HAIR | EYES | DLN | DL STATE |
|---|---|---|---|---|---|---|---|---|---|
| Female | Other | 1/19/1980 | 37 | 5' 2" | 120 | Brown | Green | F7510172 | California |

| ALIAS | | ALIAS DOB | | ALIAS SSN | |
|---|---|---|---|---|---|
| | | | | | |

| ADDRESS TYPE | ADDRESS |
|---|---|
| Home | 16 Arese Ailse, Irvine, CA  92612 |

| PHONE TYPE | PHONE NUMBER |
|---|---|
| Mobile | (847) 912-0401 |

| EMAIL/SOCIAL MEDIA ADDRESS |
|---|
| |

| SCARS / MARKS / TATTOOS | LOCATION | DESCRIPTION |
|---|---|---|
| | | |

| EMPLOYER/SCHOOL | ADDRESS | OCCUPATION/GRADE |
|---|---|---|
| | , | |

| ADDITIONAL INFORMATION |
|---|
| |

| REPORTING OFFICER | ENTERED DATE | PRINTOUT CREATED | PAGE |
|---|---|---|---|
| 508 - Irwin, Timothy | 5/5/2022 6:33:11 PM | 11/5/2022 5:18:42 PM | 5 of 9 |

Property/Vehicle(s)

CONTROLLED DOCUMENT
DUPLICATION OR REISSUANCE CONTROLLED BY LAW
California Government Code 6254

| REPORTING OFFICER | ENTERED DATE | PRINTOUT CREATED | PAGE |
|---|---|---|---|
| 508 - Irwin, Timothy | 5/5/2022 6:33:11 PM | 11/5/2022 5:18:42 PM | 6 of 9 |

Case Number: **IPD-22-05996**
Report Number: IPD-22-05996-001

NARRATIVE

\*\*\*MY DEPARTMENT ISSUED BODY WORN CAMREA WAS ACTIVATED DURING THIS TELEPHONE REPORT. THE DOCUMENT IS A SUMMARY AND NOT A VERBATIM ACCOUNT\*\*\*

On 050/05/22, at 1757 hours, I was dispatched to a telephone report. I called the reporting party, who identified himself as Yevgeniy Goziker (DOB 06/21/78). Yevgeniy said he was calling from Europe and wanted to report an incident that occurred at 1300 hours on 08/27/2017 involving his ex-wife, Irina Goziker. The parties had been living at 16 Arese Aisle (Irvine) at the time, and he said Irina still resides at the location. At the time of the incident, the parties had been married for 12 years and had two children in common.

Yevgeniy said on the above described time/date, the parties had been in an argument about Irina not having stocked the fridge. During the verbal argument, Irina opened a kitchen drawer, pulled a Japanese sushi style knife with a 9''-10'' stainless steel, and put it in front of Yevgeniy's stomach. Yevgeniy said the tip of knife had been touching his stomach and she held it there for up to 30 seconds. Yevgeniy asked Irina if she wanted to kill him, but he could not remember what she said. He believed Irina was shocked and she stepped away, putting the knife down. She then grabbed a wine glass, broke it on the counter, and grabbed a glass shard. She held the glass shard and held it in front of Yevgeniy's stomach, but did not touch it. After holding the shard there, she turned around. Yevgeniy grabbed her by the shoulders and took the shard away from her. Irina then sat on the couch, cried, and asked Yevgeniy if he was going to call the police. Their five year-old daughter (at the time), Vivenne Goziker, asked Yevgeniy to not call the police, so he did not.

Yevgeniy denied any injuries as a result of the incident, but said he suffered psychological injures.

He said 3-4 days prior to the incident, Irina had put a basket on the granite countertop with knives in it. Yevgeniy was concerned at the time she had done that, so she text messaged him. Irina responded telling him not worry and that she would not kill him.

Yevgeniy said he left the next day after the 08/27/2017 incident, never went back to the house, and Irina filed for divorce.

Yevgeniy said he wanted to file a report with police because there are statute of limitations and wants to press charges against Irina. He said Irina is keeping his children from him and her lawyers are "racketeering."

Yevgeniy reported a past domestic dispute in 2010-2011 that was handled by Chicago PD, with no arrest being made.

Forward to IPD detective bureau for review.

| REPORTING OFFICER | ENTERED DATE | PRINTOUT CREATED | PAGE |
|---|---|---|---|
| 508 - Irwin, Timothy | 5/5/2022 6:33:11 PM | 11/5/2022 5:18:42 PM | 7 of 9 |

CONTROLLED DOCUMENT
DUPLICATION OR REISSUANCE CONTROLLED BY LAW
California Government Code 6254

PHOTOS

CONTROLLED DOCUMENT
DUPLICATION OR REISSUANCE CONTROLLED BY LAW
California Government Code 6254

| REPORTING OFFICER | ENTERED DATE | PRINTOUT CREATED | PAGE |
|---|---|---|---|
| 508 - Irwin, Timothy | 5/5/2022 6:33:11 PM | 11/5/2022 5:18:42 PM | 9 of 9 |

# EXHIBIT B

## Payment Activity

To view your federal tax form, visit Form 1099G.

*Required Field



## Search Payment History

Enter a date range to view information about payments issued during the selected date range.

*From Date

| 07/29/2019 | 📅 |
|---|---|

MM/DD/YYYY

*To Date

| 12/01/2019 | 📅 |
|---|---|

MM/DD/YYYY

## Payment History

Unemployment insurance benefits issued between 07/29/2019 and 12/01/2019: $4,950.00

| View | Payment Issue Date | Payment Issued | Payment ID | Payment Status |
|---|---|---|---|---|
| Details | 11/18/2019 | $900.00 | 21638161 | Paid |
| Details | 11/04/2019 | $900.00 | 21349922 | Paid |
| Details | 10/31/2019 | $900.00 | 21258473 | Paid |
| Details | 10/31/2019 | $900.00 | 21258474 | Paid |
| Details | 09/26/2019 | $900.00 | 20569777 | Paid |
| Details | 09/12/2019 | $450.00 | 20283314 | Paid |

# EXHIBIT C

uio.edd.ca.gov/UIO/Pages/ExternalUser/ClaimantAccountManagement/PaymentActivity.aspx?_NodeID=163

EDD Employment Development Department State of California

UI Home Certify Payments History Status Profile Inbox Contact

## Search Payment History

Enter a date range to view information about payments issued during the selected date range.

*From Date

07/29/2021

MM/DD/YYYY

*To Date

09/01/2021

MM/DD/YYYY

Search Reset

## Payment History

Unemployment Insurance benefits issued between 06/16/2021 and 09/01/2021: $3,000.00

| View | Payment Issue Date | Payment Issued | Payment ID | Payment Status |
|---|---|---|---|---|
| Details | 08/30/2021 | $1,500.00 | 28887963 | Paid |
| Details | 08/17/2021 | $1,500.00 | 25622559 | Paid |

21°C ENG 11:36 AM 6/16/2023



EXHIBIT D

Jaclin Awad, SBN: 242174
Christine M. Torres, SBN:  258294
LAW OFFICE OF JACLIN AWAD
17315 Studebaker Road Suite 100
Cerritos, California 90703
Telephone: (562) 809-5250
Facsimile: (562) 402-1876

**Attorneys for Petitioner:**
Irena Goziker

### SUPERIOR COURT OF THE STATE OF CALIFORNIA
### IN AND FOR THE COUNTY OF ORANGE

|  |  |
|---|---|
| IRINA A. GOZIKER, | Case No. 17D007559 |
| Petitioner, | Hon. Nathan Vu |
| and | **DECLARATION OF JACLIN AWAD** |
| GENE GOZIKER, |  |
| Respondent. |  |

I, JACLIN AWAD, ESQ., do hereby declare as follows:

1. I am over the age of eighteen.  The facts set forth herein are within my own personal knowledge and belief; and if called as a witness I could and would competently testify to the same.

2. I prepared an ex parte Request for Order and noticed it for hearing on July 29, 2021, which included a request that the

---

DECLARATION OF JACLIN AWAD

1

court appoint an elisor to execute documents regarding the
real property.

3. I misspelled the street name of the property as follows:

> 16 Arise Aisle
>
> Irvine, California  92606

4. The correct street name of the property is:

> 16 Arese Aisle
>
> Irvine, California  92606

5. I request that the court amend the orders issued on July 29,
2021 to reflect the correct street name as indicated in
paragraph 4 above.

6. The documents to be signed by the elisor are listed below and
attached as Exhibit 1:

> a. Loan Modification Agreement (Deed of Trust);
>
> b. Borrower Acknowledgement;
>
> c. Notice of No Oral Agreements; and
>
> d. Errors and Omissions Compliance Agreement.

I declare under penalty of perjury according to the laws of
the State of California that the foregoing is true and correct.

Dated: August 20, 2021          By_____

Jaclin Awad, Esq., Declarant

DECLARATION OF JACLIN AWAD

2

Jaclon Awad's

# EXHIBIT 1 a



**JULY 22, 2021**

**GENE GOZIKER**
**IRINA GOZIKER**
**2971 S FAIRVIEW ST UNIT A**
**SANTA ANA, CA 92704**

| | Account Information |
|---|---|
| Online: | yourwellsfargomortgage.com |
| Fax: | 1 − 866 − 359 − 7363 |
| Telephone: | 1 − 800 − 416 − 1472 |
| Correspondence: | PO Box 10335 |
| | Des Moines, IA 50306 |
| Hours of operation: | Mon - Thurs, 7 a.m. – 9 p.m. |
| | CT Fri, 7 a.m. – 8 p.m. CT |
| | Sat, 8 a.m. – 4 p.m. CT |
| Loan number: | (scan barcode) |
| Property address: | **16 ARESE AISLE** |
| | **IRVINE, CALIFORNIA** |
| | **92606** |

Subject: The Loan Modification Agreement

Dear **GENE GOZIKER, IRINA GOZIKER:**

**We're pleased to confirm that you're approved for a loan modification.** We've enclosed an agreement that includes the terms of the loan modification. It's important to note that we're not refinancing the original mortgage.

This letter will help you understand the next steps to accept this modification.

**What you need to do by AUGUST 6, 2021**
To complete the modification, you'll need to sign, have notarized, and return the following documents to us by **AUGUST 6, 2021.**

- **Loan Modification Agreement.**
- **Notice of Special Flood Hazard Area (SFHA)**, if enclosed.

We'll put you in touch with a free mobile notary service, but you don't have to wait for them to contact you. You can use any notary service that's convenient for you. If you work with a mobile notary, they'll bring the documents to your appointment, and they'll also take care of sending them back to us. If you work with your own notary, you'll need to send the notarized documents to us by **AUGUST 6, 2021.** Be sure to make a copy of the documents for your records.

To find a notary service:

- Most Wells Fargo branches have notaries that can help you for free.
- You can also usually find notary services at banks, credit unions, photocopy shops, and stores that offer packaging and shipping services.
- Whether you want to use a notary from one of our branches or another business, it's a good idea to call ahead. That way, you can make sure that notary services are available and schedule an appointment.

You can contact us for a postage-paid envelope, or you can use your own envelope to return the documents to:

> Final Modification Documents
> Document Management
> Wells Fargo Home Mortgage
> 2701 Wells Fargo Way
> X9999-01N FL 01
> Minneapolis, MN 55467

If you don't return all of these documents to us by **AUGUST 6, 2021**, and you still want to be considered for a modification, you'll need to contact us immediately.

### Important information about completing this agreement

- Make sure that all signatures match the printed names. If any of the printed names need to be corrected, please call us immediately. You may be asked to provide documentation, such as a death certificate, a divorce decree, a recorded Quit Claim Deed, or a marriage certificate, to make the correction.
- Once we receive the signed and completed documents and payment from you, we'll modify the loan. Whether or not you accept this agreement, we'll continue to service the loan. We may continue to send collections communications by mail or phone and continue with any legal proceedings.

### Details of the Loan Modification Agreement:

- Due date of first payment: **SEPTEMBER 1, 2021**
- New principal balance: **$435,162.78**
- Deferred balance: **$6,261.68**
- New principal and interest monthly payment amount: **$1,298.82**
- Escrowed real estate taxes monthly amount: **$491.10**
- Escrowed property insurance monthly amount: **$65.07**
- Total monthly escrow payment **$556.17**
- Total modified monthly payment: **$1,854.99**
  This payment amount includes principal, interest, and if applicable, escrow and escrow shortage amounts.
- New maturity date: **AUGUST 1, 2061**
- New interest rate: **2.0000%**

**We're here to help**
I look forward to hearing from you by **AUGUST 6, 2021.** If you have any questions, please call me at the phone number below.

Sincerely,

**TREY COOPER**
**Home Preservation Specialist**
**877-458-8417 ext. 1335026959**
**Wells Fargo Home Mortgage**

Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A. © 2021 Wells Fargo Bank, N. A. All rights reserved. NMLSR ID 399801

# Sign and return your notarized documents to us within 15 days



*You'll need to sign documents to accept the agreement. Some of those signatures you'll need to have notarized. See the cover letter for information about returning the notarized documents to us.*

## Here's what the process will look like



Arrange a convenient time and place to meet with a notary.



Review the documents enclosed. Contact us if you have any questions along the way.



See the signing instructions, "Work with a Notary to Sign and Return This Agreement in 15 Days," also enclosed. You can use these instructions to complete the documents correctly.



Have a valid, government-issued ID ready. This can be a driver's license, state ID card, or passport. The notary must ensure that it matches the name on the documents.



Please call us when the signing is complete.

## Contact us with any questions

The notary won't be able to answer questions about the information in the documents, but we will. Please contact us at the number listed on the cover letter.

Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A. © 2021 Wells Fargo Bank, N.A. All rights reserved. NMLSR ID 399801

RECORDING REQUESTED BY:
WILMA DMELLO
WELLS FARGO BANK, N.A.
1 HOME CAMPUS
DES MOINES, IA 50328
(800) 416-1472


WHEN RECORDED MAIL TO:
FIRST AMERICAN TITLE CO.
FAMS – DTO RECORDING
3 FIRST AMERICAN WAY
SANTA ANA, CA  92707-9991

Space above for recorder's use only

LOAN MODIFICATION AGREEMENT (DEED OF TRUST)
Title of Document

This cover sheet added to provide adequate space for recording information
($3.00 Additional Recording Fee Applies)



# Work with a notary to sign and return this agreement in 15 days



*Use this checklist with the notary, who must be present when you complete, sign, and date the documents. Your modification will close sooner if you work with the notary to complete your documents correctly.*

## Customers (borrowers)

☐ Review all the documents enclosed, including the agreement, affidavits, and all related documents ("documents"), which may also need to be notarized. If you have any questions, call us before you get started. If needed, we'll prepare new documents for you to sign.

☐ **Work with a notary, who must be present when you complete, sign, and date the documents.** Do not complete, sign, or date the documents unless the notary is present.

☐ Use blue or black ink.

☐ Make sure that all signatures match the printed names. If any of the printed names need to be corrected, please call us immediately.

☐ Write in the date where indicated.

☐ If you or another borrower needs to correct a signature or date that you wrote by mistake, draw a line through the error and write in the correction clearly. Then initial the correction.

☐ Your state may require witnesses to sign these documents. If this is the case, they must neatly print their names below their original signatures.

*Note: The notary can be a witness, except in the states of Georgia and Louisiana. If the notary is a witness, he or she must sign in both the Witness and the Borrower Acknowledgement sections.*

You can contact us if you have any questions along the way.

Call us at the number listed on the cover letter.

## Notary

☐ Review the documents to be completed and notarized.

*Note: Each set of documents includes the agreement, affidavits, and all related documents ("documents"). The customer must sign the agreement along with any affidavits or related documents, if they're enclosed.*

☐ Use blue or black ink.

☐ Don't print the customer's driver's license or other identification document numbers on the documents.

☐ Both you and the customer must sign where indicated and on the same date. Please also write the month, day, and year.

☐ Make sure that the person signing is the person who is named on the document.

☐ If you need to correct a signature or date that you wrote by mistake, draw a line through the error and write in the correction clearly. Then initial the correction.

☐ Place the stamp and your signature within the document margins. Place the stamp below the Borrower Acknowledgement section on the Acknowledgment page.

*Note! We will fill out the Lender Acknowledgement section. Do not notarize the Lender Acknowledgement section.*

☐ Make sure that the stamp and all other information is legible.

☐ Do not cover any written information with the stamp or your signature.

☐ Complete the state and county.

☐ Print your name under your signature in the Acknowledgement section. When you notarize the Borrower Acknowledgement section, provide the date your commission expires.

☐ Also print your name after the "before me" paragraph in the Acknowledgement sections. In different states, this might say "acknowledged before me" with a blank line, "by the undersigned," or other variations.

Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A. © 2021 Wells Fargo Bank, N.A. All rights reserved. NMLSR ID 399801

**SUMMARY** — Here is a summary of your modified mortgage.

**New Principal Balance.** Any past due amounts as of the end of the trial period, including unpaid interest, real estate taxes, property insurance premiums, and certain assessments paid on your behalf to a third party, will be added to the mortgage loan balance. As of the modification effective date all late charges that have accrued and remain unpaid will be waived.

**Unpaid Principal Balance.** Current Unpaid Principal Balance of the loan remaining as of JULY 22, 2021. The Unpaid Principal Balance does not include unpaid interest, real estate taxes, property insurance premiums, or assessments paid on your behalf to a third party. As of the modification effective date all late charges that have accrued and remain unpaid will be waived.

**Interest Rate.** The interest rate on the modified loan may be adjusted as noted in the attached Loan Modification Agreement.

**Term Extension.** To reduce the mortgage payment, we may extend the term of the mortgage. This means we may spread the payments over a longer period.

**Deferral of Principal.** To further reduce the mortgage payment, we will defer collection of and not collect interest on $6,261.68 of the outstanding principal. You will not be required to make monthly payments on that portion. This portion of principal will be due when the modified loan is paid off, which may be when you sell or transfer an interest in the house, refinance the loan, or when the last scheduled payment is due.

**Escrow Account.** The terms of the modification agreement require the servicer to set aside a portion of the new monthly payment in an escrow account for payment of the real estate taxes, property insurance premiums and other required fees. Upon acceptance of the offer, any prior waiver of escrows by your lender is no longer in effect. Wells Fargo Home Mortgage will draw on this account to pay the real estate taxes and property insurance premiums, as they come due. Please note after the modification is complete, the escrow payment amount will adjust at least annually if the real estate taxes, property insurance premiums and/or assessment amounts change, so the amount of the monthly payment that Wells Fargo Home Mortgage must place in escrow will also adjust as permitted by law. This means that the monthly payment may change. The initial monthly escrow payment will be $556.17, which contains the separate escrowed amounts listed above. This amount is included in the loan payment noted in Section 2 of the enclosed modification Agreement; you do not need to remit this amount separately.

**Change To Biweekly Payment Loans.** If the Loan is a biweekly loan, through the enclosed Agreement, the Loan will convert to a monthly payment schedule. References in the Loan Documents to "biweekly," "every two weeks," and "every other Monday" shall be read as "monthly," except as it relates to the Modified Maturity Date. Interest will be charged on a 360-day year, divided into twelve (12) segments. Interest charged at all other times will be computed by multiplying the unpaid principal by the interest rate, dividing the result by 365, and then multiplying that daily interest amount by the actual number of days for which interest is then due.

This Document Prepared By:
WILMA DMELLO
WELLS FARGO BANK, N.A.
1 HOME CAMPUS
DES MOINES, IA 50328
(800) 416-1472

When Recorded Mail To:
FIRST AMERICAN TITLE CO.
FAMS – DTO RECORDING
3 FIRST AMERICAN WAY
SANTA ANA, CA  92707-9991

Tax/Parcel #:  937-815-39

_____ [Space Above This Line for Recording Data] _____

Original Principal Amount: $453,000.00
Unpaid Principal Amount: $428,901.10
New Principal Amount: $435,162.78
Total Cap Amount: $6,261.68

Investor Loan No.:
Loan No: (scan barcode)

# LOAN MODIFICATION AGREEMENT (DEED OF TRUST)

Executed on this day: JULY 22, 2021
Borrower ("I")[1]: GENE GOZIKER AND IRINA GOZIKER, MARRIED
Borrower Mailing Address: 2971 S FAIRVIEW ST UNIT A , SANTA ANA, CA  92704
Lender or Servicer ("Lender"): WELLS FARGO BANK, N.A.
Lender or Servicer Address: 1 HOME CAMPUS, DES MOINES, IA 50328

[1] If there is more than one Borrower or Mortgagor executing this document, each is referred to as "I." For purposes of this document words signifying the singular (such as "I" or "my") shall include the plural (such as "we" or "our") and vice versa where appropriate.

Wells Fargo Custom Non HAMP 05312021_368

Date of first lien mortgage, deed of trust, or security deed ("Mortgage") JANUARY 30, 2017 and the Note ("Note") date of JANUARY 30, 2017 and Recorded on FEBRUARY 3, 2017 in INSTRUMENT NO. 2017000050173, of the OFFICIAL Records of ORANGE COUNTY, CALIFORNIA

Property Address ("Property"): 16 ARESE AISLE, IRVINE, CALIFORNIA 92606

Legal Description:

## SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF:

This Loan Modification Agreement ("Agreement") is made on JULY 22, 2021 by and between Borrower, as obligor(s), or as title holder(s) to the Property, as the context may require, and Lender. Borrower's obligations under the Note are secured by a properly recorded Mortgage, dated the same date as the Note encumbering the Property. Borrower agrees that, except as expressly modified in this Agreement, the Note and the Mortgage remain in full force and effect and are valid, binding obligations upon Borrower, except as discharged in Bankruptcy, and are properly secured by the Property.

If my representations in Section 1, Borrower Representations, continue to be true in all material respects, then this Agreement will amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are hereafter referred to as the "Loan Documents" Capitalized terms used in this Agreement and not defined have the meaning given to them in the Loan Documents.

In consideration of the covenants hereinafter set forth and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, it is agreed as follows (notwithstanding anything to the contrary in the Loan Documents).

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement.

Nothing in this Agreement shall be understood or construed to be a satisfaction or release, in whole or in part of the Borrower's obligations under the Loan Documents. Further, except as otherwise specifically provided in this Agreement, the Loan Documents will remain unchanged, and Borrower and Lender will be bound by, and shall comply with, all of the terms and provisions thereof, as amended by this Agreement:

**1.  Borrower Representations.**

Wells Fargo Custom Non HAMP 05312021_368

I certify, represent to Lender and agree:

A. I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents, and/or (ii) I do not have sufficient income or access to sufficient liquid assets to make the mortgage payments now or in the near future; I did not intentionally or purposefully default on the Mortgage Loan in order to obtain a loan modification;

B. Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the modification, are true and correct;

C. If Lender requires me to obtain credit counseling in connection with the modification, I will do so;

D. I have made or will make all payments required within this modification process;

E. In consideration of the covenants hereinafter set forth and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the Parties, it is agreed as follows (notwithstanding anything to the contrary in the Loan Documents).

2. **The Modification.**

A. The modified principal balance of the Note will include amounts and arrearages that will be past due as of the Modification Effective Date (which may include unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, valuation, property preservation, and other charges not permitted under the terms of this modification, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not previously credited to the modified loan. The new principal balance of the Note will be **$435,162.78** (the "New Principal Balance"). Borrower understands that by agreeing to add the Unpaid Amounts to the principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. Borrower also understands that this means interest will now accrue on the unpaid interest that is added to the outstanding principal balance, which would not happen without this Agreement.

B. **$6,261.68** of the New Principal Balance shall be deferred (the "Deferred Balance") and will be treated as a non-interest bearing principal forbearance. I will not pay interest or make monthly payments on the Deferred Balance. The New Principal Balance less the Deferred Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is **$428,901.10**. Interest at the rate of **2.0000%** will begin to accrue on the Interest Bearing Principal Balance as of



**AUGUST 1, 2021** and the first new monthly payment on the Interest Bearing Principal Balance will be due on **SEPTEMBER 1, 2021.** Interest due on each monthly payment will be calculated by multiplying the Interest Bearing Principal Balance and the interest rate in effect at the time of calculation and dividing the result by twelve (12). The payment schedule for the modified Loan is as follows:

| Months | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment | Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On |
|--------|---------------|---------------------------|----------------------------------------|--------------------------------|-------------------------|--------------------|
| 12 | 2.0000% | 08/01/2021 | $1,298.82 | $556.17 | $1,854.99 | 09/01/2021 |
| 12 | 3.0000% | 08/01/2022 | $1,530.18 | $556.17 | $2,086.35 | 09/01/2022 |
| 456 | 3.1250% | 08/01/2023 | $1,559.93 | $556.17 | $2,116.10 | 09/01/2023 |

\* After the modification is complete, escrow payments adjust at least annually in accordance with applicable law; therefore, the total monthly payment may change accordingly.

The above terms shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step or simple interest rate.

Borrower agrees to pay in full the Deferred Balance and any other amounts still owed under the Loan Documents by the earliest of: (i) the date an interest in the Property is sold or transferred, (ii) the date on which the entire Interest Bearing Principal Balance is paid off, or (iii) the Maturity Date.

Borrower agrees that any partial prepayments of Principal may be applied at Lender's discretion first to any Deferred Balance before applying such partial prepayment to other amounts due.

**Notice to Borrower:** The Deferred Balance will result in a lump sum payment due at the time of loan maturity or earlier upon payoff of the loan. If the Borrower does not have the funds to pay the lump sum payment when it comes due, the Borrower may have to obtain a new loan against the property. In that case, the Borrower may have to pay commissions, fees, and expenses for the arranging of the new loan. In addition, if the Borrower is unable to make the monthly payments or the lump sum payment, the Borrower may lose the property and all equity through foreclosure. Keep this in mind in deciding upon this modification. The lump sum payment on this loan is due **AUGUST 1, 2061** or upon earlier payoff of the loan.

3. Loan Modification Terms.

This Agreement hereby modifies the following terms of the Loan Documents as described herein above as follows:

A. The current contractual due date has been changed from **OCTOBER 1, 2019** to **SEPTEMBER 1, 2021.** The first modified contractual due date is **SEPTEMBER 1, 2021.**

B. The maturity date is **AUGUST 1, 2061.**

C. The amount of Recoverable Expenses* to be deferred will be U.S. **$2,391.40.**

*Recoverable Expenses may include, but are not limited to: Title, Attorney fees/costs, BPO/Appraisal, and/or Property Preservation/Property Inspections.

D. Lender will forgive outstanding Other Fees U.S. **$0.00.**

E. Lender will forgive outstanding NSF Fees U.S. **$0.00.**

F. Lender agrees to waive all unpaid Late Charges in the amount of U.S. **$445.68.**

G. The amount of interest to be included (deferred) will be U.S. **$34,937.46.**

H. The amount of the Escrow Advance to be deferred will be U.S. **$3,870.28.**

4. Additional Agreements.

I agree to the following:

A. If applicable, the Note may contain provisions allowing for changes in the interest rate and the monthly payment. The Note limits the amount the Borrower's interest rate can change at any one time and the maximum rate the Borrowers must pay.

B. If a biweekly loan, the Loan will convert to a monthly payment schedule. References in the Loan Documents to "biweekly," "every two weeks," and "every other Monday" shall be read as "monthly," except as it relates to the Modified Maturity Date. Interest will be charged on a 360-day year, divided into twelve (12) segments. Interest charged at all other times will be computed by multiplying the interest bearing principal balance by the interest rate, dividing the result by 365,



and then multiplying that daily interest amount by the actual number of days for which interest is then due. As part of the conversion from biweekly to monthly payments, any automatic withdrawal of payments (auto drafting) in effect with Lender for the Loan are cancelled.

C. **Funds for Escrow Items.** I will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." I shall promptly furnish to Lender all notices of amounts to be paid under this Section 4.E. I shall pay Lender the Funds for Escrow Items unless Lender waives the obligation to pay the Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. The obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and Agreement contained in the Loan Documents, as the phrase "covenant and Agreement" is used in the Loan Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Lender all Funds, and in such amounts, that are then required under this Section 4.E.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay me any interest or earnings on the Funds. Lender and I can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to me for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to me any Funds held by Lender.

D. That the mortgage insurance premiums on the loan, if applicable, may increase as a result of the modification of the loan which may result in a higher total monthly payment. Furthermore, the cancellation date, termination date, or final termination of the private mortgage insurance may be recalculated to reflect the modified terms and conditions of the loan.

E. If the Borrowers balance has been reduced as a result of this new Agreement, it is understood that any credit life, accident and health, and involuntary unemployment insurance written in connection with this loan has been cancelled, and that any refund of unearned premiums or charges made because of the cancellation of such credit insurance is reflected in the amount due under this Agreement. *Exception:* In the state of California, Life, A&H, and IUI insurance <u>must</u> be cancelled, with refunds applied to the account prior to entry of the settlement transaction, even though there is no reduction in balance as part of the settlement.

F. If this loan has "Monthly Add-On Premium" Credit Life or Credit Accident &

Health Insurance coverage, it is understood and agreed that the Borrowers acceptance of this Agreement will result in the cancellation of the above-mentioned Insurances.

G. If the Borrower's home owners insurance should lapse, **Wells Fargo Home Mortgage** reserves the right to place Lender Placed Insurance (LPI) on the account. If LPI is placed on the account the monthly payment could increase. All other terms of the modification Agreement will not be affected by the LPI and will remain in effect with accordance to this Agreement.

H. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Loan Documents. If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Loan Documents. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Loan Documents without further notice or demand on Borrower.

I. If Borrower has a pay option adjustable rate mortgage Loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for the modified Loan will be the minimum payment that will be due each month for the remaining term of the Loan.

J. If included, the undersigned Borrower(s) acknowledge receipt and acceptance of the 1-4 Family Modification Agreement Rider Assignment of Rents.

K. If included, the undersigned Borrower(s) acknowledge receipt and acceptance of the Notice of Special Flood Hazard disclosure.

L. CORRECTION AGREEMENT: The undersigned Borrower(s), for and in consideration of the approval, closing and funding of this Modification, hereby grants **Wells Fargo Home Mortgage**, as lender, limited power of attorney to correct and/or initial all typographical or clerical errors discovered in the Modification Agreement required to be signed. In the event this limited power of attorney is exercised, the undersigned will be notified and receive a copy of the document executed or initialed on their behalf. This provision may not be used to modify the interest rate, modify the term, modify the outstanding principal balance



or modify the undersigned's monthly principal and interest payments as modified by this Agreement. Any of these specified changes must be executed directly by the undersigned. This limited power of attorney shall automatically terminate in 180 days from the closing date of the undersigned's Modification, or the date any and all documents that the lender requires to be recorded have been successfully recorded at the appropriate office, whichever is later. Borrower agrees to make and execute such other documents or papers as necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to their heirs, executors, administrators, and assigns of the Borrower.

M. If the Borrower's Loan is currently in foreclosure, the Lender will attempt to suspend or cancel the foreclosure action upon receipt of the first payment according to this Agreement. Lender agrees to suspend further collection efforts as long as Borrowers continue making the required payments under this Agreement.

N. All the rights and remedies, stipulations, and conditions contained in the Loan Documents relating to default in the making of payments under the Loan Documents shall also apply to default in the making of the modified payments hereunder.

O. This Agreement shall supersede the terms of any modification, forbearance, trial period plan or other mortgage assistance that the Borrower previously entered into with Lender.

P. In cases where the Loan has been registered with Mortgagee who has only legal title to the interests granted by the Borrower in the Loan Documents, Mortgagee has the right to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property and to take any action required of Lender including, but not limited to, releasing and canceling the Loan.

Q. If the Loan Documents govern a home equity loan or line of credit, then Borrower agrees that as of the Modification Effective Date, the right to borrow new funds under the home equity loan or line of credit is terminated. This means that Borrower cannot obtain additional advances and must make payments according to this Agreement. Lender may have previously terminated or suspended the right to obtain additional advances under the home equity loan or line of credit, and if so, Borrower confirms and acknowledges that no additional advances may be obtained.



R.  Unless this Agreement is executed without alteration and is signed and returned along with the following documents with the payment, if required, within 15 days from the date of this letter in the enclosed, prepaid overnight envelope, it will be of no force or effect and the Loan will remain subject to all existing terms and conditions provided in the Loan Documents. Upon receipt of a properly executed Agreement, this Agreement will become effective on **AUGUST 1, 2021.**

S.  I agree that this Agreement will be null and void if the Lender is unable to receive all necessary title endorsement(s), title insurance product(s) and/ or subordination Agreement(s).

T.  Borrower must deliver to **Wells Fargo Home Mortgage** a properly signed modification Agreement by **AUGUST 6, 2021.** If Borrower does not return a properly signed modification Agreement by this date and make all payments pursuant to the trial plan Agreement or any other required pre-modification payments, **Wells Fargo Home Mortgage** may deny or cancel the modification. If the Borrower returns properly signed modification Agreement by said date, payments pursuant to the loan modification Agreement are due as outlined in this modification Agreement. **Wells Fargo Home Mortgage** may deny or cancel this loan modification Agreement if Borrower fails to make the first payment due pursuant to this loan modification Agreement.

All Borrowers are required to sign and date this Agreement in blue or black ink only as the borrowers' name appears below. If signed using any other color or method, the document will not be accepted and another copy of the Agreement will be sent to the Borrower to be signed.

By signing below, all Borrowers certify they have read this Agreement in its entirety, that all Borrowers know and understand the meaning and intent of this Agreement and that all Borrowers enter into this Agreement knowingly and voluntarily. By signing below, all Borrowers agree to all terms and conditions described on every page of this Agreement.

In Witness Whereof, I have executed this Agreement.

Borrower:**GENE GOZIKER**

Date

**IRINA GOZIKER** *signing solely to acknowledge this Agreement, but not to incur any personal liability for the debt

Date

Wells Fargo Custom Non HAMP 05312021_368

Page 11

## BORROWER ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of _____ )

County of _____ )

On _____ before me, _____ Notary
Public,

      (Date)          (here insert name and title of officer)
personally appeared, **GENE GOZIKER**, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under the PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature_____
          Signature of Notary Public

Wells Fargo Custom Non HAMP 05312021_368

## BORROWER ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of _____ )

County of _____ )

On _____ before me, _____ Notary
Public,
          (Date)                (here insert name and title of officer)
personally appeared, **IRINA GOZIKER**, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under the PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature_____
              Signature of Notary Public

In Witness Whereof, the Lender has executed this Agreement.

**WELLS FARGO BANK, N.A.**

By: (print name) _____    (sign) _____    Date _____
     (title)

_____ [Space Below This Line for Acknowledgments] _____

**LENDER ACKNOWLEDGMENT**

STATE OF _____

COUNTY OF _____

This instrument was acknowledged before me

_____(date) by _____

(name(s) of person(s)) as _____ (type of authority, e.g.,

officer, trustee, etc.) of WELLS FARGO BANK, N.A. (name of party on behalf of whom

the instrument was executed).


_____

Notary Public

Printed Name: _____

My Commission Expires:

_____

EXHIBIT A

BORROWER(S): GENE GOZIKER AND IRINA GOZIKER, MARRIED

LOAN NUMBER: (scan barcode)

LEGAL DESCRIPTION:

THE LAND REFERRED TO IN THIS REPORT IS SITUATED IN THE COUNTY OF ORANGE AND STATE OF CALIFORNIA, AND DESCRIBED AS FOLLOWS:

A CONDOMINIUM COMPRISED OF:

PARCEL 1:

UNIT 226, CONSISTING OF CERTAIN AIRSPACE AND SURFACE ELEMENTS, AS SHOWN AND DESCRIBED IN THE CONDOMINIUM PLAN ("PLAN") FOR PHASE 4 OF CORTE BELLA, WHICH PLAN WAS RECORDED FEBRUARY 25, 1991, AS INSTRUMENT NO. 91-084294, OF OFFICIAL RECORDS OF ORANGE COUNTY, CALIFORNIA.

PARCEL 2:

AN UNDIVIDED 1/35TH FEE SIMPLE INTEREST AS A TENANT IN COMMON IN AND TO ALL OF THE REAL PROPERTY, INCLUDING WITHOUT LIMITATION THE COMMON AREA DEFINED IN THE DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS AND RESERVATION OF EASEMENTS FOR CORTE BELLA ("DECLARATION") RECORDED AUGUST 28, 1990, AS INSTRUMENT NO. 90-460005 AND IN THE NOTICE OF ADDITION OF TERRITORY AND SUPPLEMENTAL DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS FOR PHASE 4 OF CORTE BELLA ("NOTICE") RECORDED FEBRUARY 26, 1991, AS INSTRUMENT NO. 91- 086185, BOTH OF OFFICIAL RECORDS OF ORANGE COUNTY, CALIFORNIA AND ALL AMENDMENTS THERETO, IN LOT 4 OF TRACT NO. 13554, AS SHOWN ON A MAP RECORDED IN BOOK 644, PAGES 35 TO 43 INCLUSIVE, OF MISCELLANEOUS MAPS, RECORDS OF ORANGE COUNTY, CALIFORNIA.

PARCEL 3:

NON-EXCLUSIVE EASEMENTS FOR ACCESS, INGRESS, EGRESS, USE, ENJOYMENT, DRAINAGE, ENCROACHMENT, MAINTENANCE, REPAIRS AND FOR OTHER PURPOSES, ALL AS MAY BE SHOWN IN THE PLAN, AND AS ARE DESCRIBED IN THE DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS AND RESERVATION OF EASEMENTS FOR WESTPARK MAINTENANCE DISTRICT ("DISTRICT DECLARATION") RECORDED DECEMBER 16, 1986, AS INSTRUMENT NO. 86-620021 OF OFFICIAL RECORDS OF ORANGE COUNTY, CALIFORNIA, AND ANY AMENDMENTS THERETO, AS IMPOSED BY THAT CERTAIN SUPPLEMENTAL DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS AND RESERVATION OF EASEMENTS FOR WESTPARK MAINTENANCE DISTRICT ("SUPPLEMENTAL DISTRICT DECLARATION") RECORDED FEBRUARY 25, 1991, AS INSTRUMENT NO. 91-084293 OF SAID OFFICIAL RECORDS, AND IN THE DECLARATION AND THE NOTICE.

Wells Fargo Custom Non HAMP 05312021_368

PARCEL 4:

EXCLUSIVE EASEMENTS APPURTENANT TO PARCELS 1 AND 2 DESCRIBED ABOVE FOR PATIO PURPOSES OVER THE AREA SHOWN AND ASSIGNED ON EXHIBIT "A" TO THE NOTICE AND DESCRIBED AS AN EXCLUSIVE USE COMMON AREA IN THE DECLARATION.

PARCEL 5:

EXCLUSIVE EASEMENTS APPURTENANT TO PARCELS 1 AND 2 DESCRIBED ABOVE FOR AIR CONDITIONING PAD AND STAIRWAY PURPOSES, DESCRIBED AS EXCLUSIVE USE COMMON AREAS IN THE DECLARATION.

ALSO KNOWN AS: 16 ARESE AISLE, IRVINE, CALIFORNIA 92606

Date: JULY 22, 2021
Loan Number: (scan barcode)
Lender: WELLS FARGO BANK, N.A.

Borrower: GENE GOZIKER, IRINA GOZIKER

Property Address: 16 ARESE AISLE, IRVINE, CALIFORNIA 92606

# NOTICE OF NO ORAL AGREEMENTS

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO ORAL AGREEMENTS BETWEEN THE PARTIES.**

**Receipt of Notice.** The undersigned hereby admit to having each received and read a copy of this Notice on or before execution of the Loan Agreement. "Loan Agreement" means one or more promises, promissory notes, agreements, undertakings, security agreements, deeds of trust or other documents, or commitments, or any combination of these actions or documents, pursuant to which a financial institution loans or delays repayment of or agrees to loan or delay repayment of money, goods or any other thing of value or to otherwise extend credit or make a financial accommodation.

Borrower:
**GENE GOZIKER**
_____                          _____
                                                                  Date

_____                          _____
**IRINA GOZIKER** *signing solely to acknowledge this Agreement, but not to incur any personal liability for the debt       Date

Wells Fargo Custom Non HAMP 05312021_368

Date: JULY 22, 2021
Loan Number: (scan barcode)
Lender: WELLS FARGO BANK, N.A.

Borrower: GENE GOZIKER, IRINA GOZIKER

Property Address: 16 ARESE AISLE, IRVINE, CALIFORNIA 92606

## ERRORS AND OMISSIONS COMPLIANCE AGREEMENT

In consideration of WELLS FARGO BANK, N.A.

(the "Lender") agreeing to modify the referenced loan (the "Loan") to the Borrower, the Borrower agrees that if requested by the Lender, the Borrower will correct, or cooperate in the correction of, any clerical errors made in any document or agreement entered into in connection with the modification of the Loan, if deemed necessary or desirable in the reasonable discretion of the Lender, to enable Lender to sell, convey, seek guaranty or market the Loan to any entity, including without limitation, the Federal National Mortgage Association, the Federal Home Loan Mortgage Corporation, the Government National Mortgage Association, the Federal Housing Authority, the Department of Veterans Affairs or any municipal bond authority.

The Borrower agrees to comply with all such requests made by the Lender within 30 days of receipt of written request from the Lender.

The Borrower makes this agreement in order to assure that the documents and agreements executed in connection with the modification of the Loan will conform to and be acceptable in the marketplace in the event the Loan is transferred, conveyed, guaranteed or marketed by the Lender.

Borrower: GENE GOZIKER _____   _____ Date



IRINA GOZIKER *signing solely to acknowledge this Agreement, but not to incur any personal liability for the debt   _____ Date

Wells Fargo Custom Non HAMP 05312021_368

EXHIBIT E

| Від: | MailTheft@uspis.gov |
|------|---------------------|
| Кому: | GGOZIKER@OUTLOOK.COM |
| Копія: | GGOZIKER@OUTLOOK.COM |
| Тема: | Identity Theft Report |
| Дата: | Tuesday, August 31, 2021 10:02:27 PM |

Thank you for completing this form.<br/><br/>Your Reference number is: 36403282<br/><br/>The U.S. Postal Inspection Service gathers data on mail-related crime to determine whether a violation has occurred. While we can't guarantee that we can recover lost money or items, your information can help alert Inspectors to problem areas and possibly prevent other people from being victimized.<br/><br/>U.S. Postal Inspectors base their investigations on the number, substance, and pattern of complaints received from the public. We ask you to keep all original documents related to your complaint. We will contact you ONLY if more information is needed.<br/><br/>Please DO NOT REPLY to this email

**WELLS FARGO | HOME MORTGAGE**

Wells Fargo
P.O. Box 10335
Des Moines, IA 50306-0335

Exhibit "F"

September 13, 2021

Gene Goziker
2971 Fairview St. Unit A
Santa Ana, CA 92704

Subject: Resolution to your inquiry about account number 0504301425

Dear Gene Goziker:

I'm glad we spoke about your concerns on August 16, 2021. I appreciate the opportunity to help you, and I'm sending this letter to summarize the key points from our conversation.

**In your inquiry and during our phone conversation, you expressed concerns about:**

- Mailing address concerns
- Concerns with a divorce decree
- Call transcript request
- Customer service experience

We're providing a response to the inquiry.

**Mailing address concerns**

We understand you are currently going through a divorce, and you have concerns as it pertains to information being released to the Obligor Irina Goziker, and the mailing address being updated by Irina Goziker.

We've determined that an update was needed on the account. We'd like to provide you with more information about our resolution.

**Here's what we've found**

We can confirm per the enclosed Note and Deed of Trust, Irina Goziker is an Obligor.

Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A. NMLSR ID 399801

Goziker
September 13, 2021
Page 2

We are at liberty to speak to Irina Goziker, and can discuss information such as:

- Payoff statements or quotes
- Next due date
- Bankruptcy status
- Foreclosure status
- Delinquency status
- Reinstatement status

With this being said, we would not need any additional authorization for Irina Goziker, as she is already an authorized third party. We can confirm she is allowed to make a payment, however she is not at liberty to make any changes to the account.

We found that the mailing address was updated to the property address, based on a request from Irina Goziker. This coincides with the alert you received on August 12, 2021, advising you of this update. We confirmed Irina Goziker is not allowed to make this update.

On August 13, 2021, the account was updated with the address of 2971 S. Fairview St. Unit A, Santa Ana, CA 92704. In addition, we have provided the appropriate feedback to the appropriate Wells Fargo representative, to ensure this does not happen again.

We know your time is valuable and appreciate the effort you took to contact us. We apologize for the inconvenience this may have caused.

**Concerns with a divorce decree**

We can confirm a divorce decree was added to our system of record on August 25, 2021. Any document sent to us about the account, will be uploaded to our imaging system of record. If you have concerns about the validity of the divorce decree, we recommend you continue to work with the courts to rectify your concerns, as we are not at liberty to provide legal advice.

We understand this is not the outcome you were hoping for.

**Call transcript request**

During our conversation on August 16, 2021, you requested all call transcripts between Wells Fargo and Irina Goziker from June 1, 2021, to present, however during our phone call on August 30, 2021, you advised you do not want us to provide call transcripts. With this being said, no further action was taken as it pertains to this matter, based on your request.

Goziker
September 13, 2021
Page 3

### Customer service experience

During our conversation on August 30, 2021, you shared some expressive feelings, in which you were not satisfied with me as your Executive Office case owner.

I apologize for any frustration you experienced while working with me, or any other Wells Fargo representative as it pertains to your concerns.

### Going forward

We value your feedback and appreciate the time and effort you took to contact us. It's been my goal to fully address the concerns you've brought to our attention.

If you have any questions, or if you'd like to request additional documents that support our research, you may reply to me directly at the return address on this letter or by phone at 1-800-853-8516, extension 2109715585. I am available to assist you Monday through Friday, 8:00 a.m. to 5:00 p.m. Central Time. If you require immediate assistance and I am unavailable, other representatives are available to assist you at 1-800-853-8516, Monday through Friday, 7:00 a.m. to 7:00 p.m. Central Time.

Sincerely,

Stacey LaMarre
Case Specialist
Home Lending Executive Office

Enclosure (s)

Where appropriate Wells Fargo Home Mortgage is required to inform you that, as your account servicer, we are attempting to collect a debt and any information obtained will be used for that purpose. However, if you are a customer involved in an active bankruptcy case or you received a discharge in a bankruptcy case where the account was not otherwise reaffirmed or excepted from discharge, then this notice is being provided to you for informational purposes only, and this is not a bill or a request for payment as to any such customer(s).

With respect to those accounts secured by property located in the State of California, the state Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP or www.ftc.gov.

0N7/co13217558/cl936

Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A. NMLSR ID 399801

Wells Fargo Home Mortgage
Return Mail Operations
PO Box 10368
Des Moines, IA  50306-0368

XNML1CDFRX  000018

||····||··||·||¹||·||·||||||||¹||···||·||||¹|·||·||¹||¹||·||·||·||·||¹||¹||¹||¹||·||¹|


Gene Goziker
2971 S Fairview ST Unit A
Santa Ana, CA  92704

XNML1CDFRX 000018  NNNNNNNNNN NNN NNN 001 021

000825

2195716G.1

*EXHIBIT g*

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE
LAMOREAUX JUSTICE CENTER – 341 The City Drive, Orange, CA 92868-3205

PETITIONER:  IRINA A GOZIKER

RESPONDENT:  GENE GOZIKER

| RULING ON SUBMITTED MATTER | CASE NUMBER:<br>17D007559 |
|---|---|

The court having taken this matter under submission on 09/16/2021, now rules in the attached, incorporated herein by reference.

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
LAMOREAUX JUSTICE CENTER

SEP 2 4 2021 *RC*

DAVID H. YAMASAKI, Clerk of the Court

BY:_____R. CASTRO_____,DEPUTY

GENE GOZIKER
535 MAGNOLIA AVE APT 405
LONG BEACH CA  90802

LAW OFFICE OF JACLIN AWAD
17315 STUDEBAKER RD STE 100
CERRITOS CA  90703

## CLERK'S CERTIFICATE OF SERVICE OF MAIL

I certify that I am not a party to this action and that this Clerk's Certificate of Service by Mail was mailed in accordance with Section 1013a of the Code of Civil Procedure.  A copy(s) of Ruling on Submitted matter were deposited in the United States mail, in a sealed envelope with postage fully prepaid addressed as shown above. The mailing and this certification occurred at Westminster, California, on: 09/24/2021

DAVID H. YAMASAKI, Clerk of the Court

Signed: 9/24/2021 7:49:04 AM

9/24/2021

By: ROBYN CASTRO, Deputy Clerk

RULING ON SUBMITTED MATTER

The Court has carefully reviewed and considered all of the testimony, evidence, and argument properly presented and admissible at the hearing or in documents filed with the Court. This includes Petitioner's Declaration of Counsel in Support of Attorney Fees and Sanctions Order Requested dated 09/16/2021 and Respondent's Declaration of Respondent in Support of Counter sanctions Order Requested Against the Petitioner's Attorney dated 09/17/2021. The Court has also reviewed and considered all matters properly judicially noticed and all applicable laws.

Having taken the matter under submission, the Court rules as follows:

Loan Modification

Pursuant to Section V.A.6 of the Judgment entered 01/11/2021 ("Judgment"), Petitioner Irina Goziker ("Wife") was awarded the real property located at 16 Arese Aisle, Irvine, California ("Irvine Property") as her sole and separate property. Section VII.A of the Judgment then required Respondent Gene Goziker ("Husband") "to make all efforts to modify the mortgage loan on the Irvine property so that the mortgage is made current." After the loan modification was complete, Section VII.B of the Judgment mandated that Wife "make all efforts to refinance the property to remove Respondent's name from the mortgage loan."

Husband was approved for a modification of the Wells Fargo loan on the Irvine Property ("Wells Fargo Loan") but refused to sign the documents necessary to complete the loan modification. Wife therefore requested and the Court appointed the court clerk as elisor to sign said documents pursuant to the specific authority of Section XXIV of the Judgment.

Wife now requests that the Court order Husband to grant Wife access to information and documentation on the Wells Fargo Loan. Husband opposes these requests and claims he was not properly given notice of Wife's *ex parte* Request for Order. Husband asserts that he was notified on 07/27/2021 by Wife's counsel Jaclin Awad, but that Ms. Awad did not sign the Substitution of Counsel

until 07/28/2021. However, the Substitution of Counsel is a notice to the Court and other parties that an attorney is representing a party. Counsel may begin to represent a party *before* the counsel signs the Substitution of Counsel. Further, Husband points to no prejudice that he suffered as a result of Ms. Awad giving him notice before she filed the Substitution of Counsel.

Husband also argues that the loan modification offered by Wells Fargo included a 40-year term and that Husband was able to find loans offered by other lenders that included lower payments and a shorter 30-year term. Husband complains that the total amount of payments on the Wells Fargo loan modification will be hundreds of thousands of dollars more than under the loans from the other lenders.

Husband is confusing a loan modification from a loan refinancing. Under the first step in the Judgment, Husband is required to modify the existing Wells Fargo loan on the Irvine Property. By definition, this can only be done through Wells Fargo. Once the loan modification is complete, then Wife is required to refinance the loan on the Irvine Property. At that time, Wife may consider loan offers from lenders other than Wells Fargo. During this stage, Husband may propose the loans that he found from other lenders.

Pursuant to Section XV of the Judgment, the Court retains the authority "to make such further and other Orders hereafter as may be deemed necessary and appropriate, to carry out and effectuate the terms of this Judgment." In this case, Wife needs to have access to the Wells Fargo Loan in order to determine the progress of the efforts to obtain a loan modification and what other actions are needed to complete the loan modification.

**Therefore, in order to carry out and effectuate the terms of the Judgment, the Court ORDERS that Husband provide Wife with all information and documents regarding the Wells Fargo Loan on the Irvine Property, or in the alternative, that Husband instruct Wells Fargo to provide Wife with access to the Wells Fargo Loan on the Irvine Property.**

## Credit Card Payments

Pursuant to Section XI.A of the Judgment, Husband owed Wife the total amount of $33,000 -- $9,200 for spousal support arrears, $7,840 for sanctions, and $15,960 for attorney's fees. Pursuant to Sections XI.B and XI.C, Husband was required to satisfy the Judgment by making payment of $16,000 to Wife's counsel on 09/21/2020 and $17,000 to Wife's counsel on or before 10/05/2020.

Husband does not dispute that he made the required payments to Wife's counsel by a credit card charge of $16,240 on or about 09/22/2020, a credit card charge of $16,000 on or about 10/07/2020, and a personal check for $1,000. Husband argues that he was justified in claiming that the credit card charges were unauthorized or fraudulent because the charges and payments totaled $33,240 when he owed $33,000.

Even assuming this is true, the charges were not actually unauthorized or fraudulent. Husband knew exactly what they were for. Husband's actions were not reasonable under the circumstances. Husband could have simply contacted Wife's counsel and demanded a refund of $240, but did not do so before challenging the credit card charge.

**The Court FINDS that Husband's credit card payments to Wife's counsel in the amount of $16,240 on or about 09/22/2020, and in the amount of $16,000 on or about 10/07/2020, were made to satisfy the Judgment, Section XI.**

Wife also requests that the Court prohibit Husband from contesting or challenging the credit card transactions in the future. However, Wife is unable to point to any provision of the Judgment or law that gives this Court that authority. Further, the Court cannot know the future circumstances and bases upon which Husband may challenge the credit card transactions in the future. Finally, the issue is likely moot. Wife's counsel has indicated that, after review, the credit card bank has rejected Husband's challenge and returned the payment to Wife's counsel.

**The Court therefore DENIES Wife's request for a Court order prohibiting Husband from challenging in the future the credit card payments made to Wife's counsel.**

## SANCTIONS

Family Code section 271 gives the Court discretion to award attorney's fees and costs when the conduct of a party or attorney:

1. "frustrates the policy of the law to promote settlement of litigation"  or

2. Frustrates the goal of "where possible, to reduce the cost of litigation by encouraging cooperation between the parties and attorneys."

(Family Code, § 271, subd. (a).)

The Court is authorized to award attorney's fees and costs as a penalty for obstreperous conduct that frustrates settlement. (*Robert J. v. Catherine D.* (2009) 171 Cal.App.4th 1500, 1520).   The Court is also authorized to award attorney's fees where a party has unreasonably increased the cost of litigation. (*In re Marriage of Corona* (2009) 172 Cal.App.4th 1205, 1227).

Husband's actions in this case are precisely the type of conduct that Section 271 seeks to prohibit.  Husband refused to sign the loan modification documents required to effectuate the loan modification mandated by the Judgment. Husband then denied Wife access to information and documents relating to the loan so that she could not determine the status of the loan modification request. Husband then made payments required by the Judgment using a credit card and then challenged one of the credit card transactions.  All of this frustrated the policy of promoting settlement and required Wife to engage in litigation that should have been unnecessary.

To the extent Husband claims that he did not commit these acts or he did not commit the acts with the intent to frustrate settlement or unnecessarily increase the costs of litigation, Husband is not a credible witness.  Throughout this litigation, Husband has taken numerous actions to frustrate settlement and unnecessarily increase litigation costs, while avoiding complying with his obligations under the law.  For example, when Wife filed requests for spousal support, Husband coincidentally lost his job, only to quickly obtain another job shortly after the hearing on Wife's request.

Husband received notice and an opportunity to be heard. Husband has the ability to pay the sanctions award from his substantial income and from assets, including the real property located at 535 Magnolia Avenue #405, Long Beach, California.

**The Court FINDS that Husband violated Family Code section 271 and ORDERS that Husband pay Wife's counsel the amount of $7,015, the reasonable attorney's fees and costs required to litigate the instant request for order. Said sum shall be paid on or before November 1, 2021.**

Husband also requests sanctions in the amounts of $87,600; $222,598.80, and $450,000. There is no basis in law or fact to support Husband's request for sanctions. In addition, the amounts requested by Husband are not related to his actual attorney's fees or costs, are significantly greater than needed to deter any alleged violative conduct, and are not reasonable.

**The Court DENIES Husband's request for sanctions.**

It is so ordered.

Date: SEP 2 4 2021

_Nathan Vu_

Judge Nathan Vu

WELLS FARGO HOME MORTGAGE

**Return Mail Operations**
PO Box 14547
Des Moines, IA 50306-4547

# EXHIBIT H

GENE GOZIKER
2971 S FAIRVIEW ST UNIT A
SANTA ANA CA 92704-6535

**What you need to know about your escrow account**
You may still be recovering from the impact of COVID-19. We understand that you've been focused on what matters most — your health and the health and safety of the people you care for -- so we're providing some information about your escrow account.

You may still be on payment suspension. Your payment may change during this time because of this escrow analysis. Rest assured that at the end of your payment suspension, we will work with you on next steps, including ways to pay an escrow shortage.

**We'll continue to analyze your account**
Throughout this payment suspension period, we'll continue to analyze your account and pay your tax bills, insurance bills, or both. The enclosed statement provides a complete summary of your most recent escrow activity and explains any changes that have occurred with your escrow bills as we look to the upcoming year.

**We're here to help**
We know that this has been a difficult time. If you have questions, please call us at the number listed on the enclosed escrow review statement.

**WELLS FARGO | HOME MORTGAGE**

Return Mail Operations
PO Box 14547
Des Moines, IA 50306-4547

Escrow Review Statement

Statement Date: February 14, 2022
Loan number: 0504301425
Property address:
16 ARESE AISLE
IRVINE CA 92606

GENE GOZIKER
2971 S FAIRVIEW ST UNIT A
SANTA ANA CA 92704-6535

## Customer Service

**Online**
wellsfargo.com

**Correspondence**
PO Box 10335
Des Moines, IA 50306

**To learn more, go to:**
wellsfargo.com/escrow

**Telephone**
1-800-734-4028

**Hours of operation**
Mon - Fri 6 a.m. - 10 p.m.
Sat 8 a.m. - 2 p.m. CT

We accept telecommunications relay service calls

## Why are you receiving this Escrow Review Statement?

Because the amounts billed for your escrow items can change over time, we review your escrow account at least once per year to ensure there will be enough money to make these payments. Once the review is complete, we send you an escrow review statement, also known as the escrow account disclosure statement.

Here's what we found:

- **Required minimum balance**: Your escrow account balance is projected to be above the required minimum balance. This means you have an **overage**.

- **Payments**: As of the **April 1, 2022** payment, the escrow portion of your payment **increases**.

> Your escrow account has an overage of
> **$2,373.07**
> The refund check is attached

## Part 1 - Mortgage payment

### New Payment

**Your new total payment will be $1,858.56**

| | Previous payment through 03/01/2022 payment date | New payment beginning with the 04/01/2022 payment. |
|---|---|---|
| **Principal and/or interest** | $1,298.82 | $1,298.82 |
| **Escrow payment** | $556.17 | $559.74 |
| **Total payment amount** | $1,854.99 | $1,858.56 |

**Note:** If you have an adjustable rate mortgage (ARM), a separate notice will be sent before your payment is scheduled to change.

### No action required

Starting **April 1, 2022** your new mortgage payment amount will be **$1,858.56**

**Note:** Since your payment is withdrawn by us, we will automatically adjust your mortgage payment. If your payments are withdrawn weekly or every other week, your payment may adjust prior to April 1, 2022.

See Page 2 for additional details.

---

**WELLS FARGO | HOME MORTGAGE**

Wells Fargo Home Mortgage
P.O. Box 10335
Des Moines, IA 50306-0335

WELLS FARGO BANK NA
WELLS FARGO BANK N.A.
ESCROW DISB CLRNG/936
889 0PB   0504301425
0504301425

17-0001
0910

Check Number
9032322303

| Mo | Day | Year |
|---|---|---|
| 02 | 15 | 22 |

## VOID ** FOR DISPLAY ONLY ** VOID

For payment of escrow to mortgagor

**TWO THOUSAND THREE HUNDRED SEVENTY THREE AND 07/100 DOLLARS**

Pay to the order of

GENE GOZIKER
2971 S FAIRVIEW ST UNIT A
SANTA ANA   CA 92704-6535

Amount

$2,373.07

Void if not cashed within 180 days

Authorized signature

## Part 2 - Payment calculations

For the past review period, the amount of your escrow items was $2,963.61. For the coming year, we expect the amount paid from escrow to be $6,716.84.

### How was the escrow payment calculated?

To determine the escrow payment, we add the projected escrow items to be paid over the next 12 months. We base these projected amounts on any escrow items that may have been paid in the past and any future anticipated payments to be made. We then divide the amounts by 12 payments to determine the escrow amount.

The chart below includes any actual escrow disbursements as well as any shortage that may have been identified for the past three analysis periods up through the date of the analysis.

### Escrow comparison

| | 04/20 - 03/21 (Actual) | 04/21 - 03/22 (Actual) | 06/21 - 02/22 (Actual) | 04/22 - 03/23 (Projected) | | # of months | | New monthly escrow amount |
|---|---|---|---|---|---|---|---|---|
| Property taxes | $2,946.61 | $2,963.61 | $2,963.61 | $5,927.22 | ÷ | 12 | = | $493.94 |
| Property insurance | $0.00 | $0.00 | $0.00 | $0.00 | ÷ | 12 | = | $0.00 |
| Other insurance | $837.00 | $780.88 | $0.00 | $789.62 | ÷ | 12 | = | $65.80 |
| Total taxes and insurance | $3,783.61 | $3,744.49 | $2,963.61 | $6,716.84 | ÷ | 12 | = | $559.74 |
| Escrow shortage | $120.46 | $0.00 | $0.00 | $0.00 | | | | |
| Total escrow | $3,904.07 | $3,744.49 | $2,963.61 | $6,716.84 | | | | $559.74 |

### Projected escrow account activity over the next 12 months

To determine if there will be a shortage or overage in your account, we calculate whether the amount of your lowest projected escrow balance will be greater or less than your required minimum balance. This is determined by subtracting your required minimum balance from your lowest projected balance. If the outcome is positive, you have an overage. If it is negative, you have a shortage. Your calculation is below:

| Lowest projected escrow balance  March, 2023 | | $3,492.55 | (Calculated in Part 3 - Escrow account projections table) |
|---|---|---|---|
| Minimum balance for the escrow account' | - | $1,119.48 | (Calculated as: $559.74 X 2 months) |
| Escrow overage | = | $2,373.07 | |

'Your minimum balance includes a cash reserve to help cover any increase in taxes and/or insurance. To calculate the cash reserve for your escrow account, we add your yearly escrow payments, and divide by 12. We take this amount and multiply it by 2 as allowed by state laws and/or the mortgage contract to determine the cash reserve.

### Important messages

You've received interest in the amount of $6.73.

ENDORSE HERE

DO NOT WRITE STAMP OR SIGN BELOW THIS LINE
RESERVED FOR FINANCIAL INSTITUTION USE ★

THIS SECURITY FEATURES ON THIS DOCUMENT INCLUDE A MICROPRINT SECURITY BORDER AND SECURITY SCREEN. ABSENCE OF THESE FEATURES MAY INDICATE ALTERATION.

★ FEDERAL RESERVE BOARD OF GOVERNORS REG. CC

Loan Number: 0504301425

## Part 3 - Escrow account projections

Escrow account projections from April, 2022 to March, 2023

| Date | Payments to escrow | What we expect to pay out | Description | Projected escrow balance | Balance required in the account |
|------|-----|-----|-----|-----|-----|
| Mar 2022 | | | Starting balance | $3,492.51 | $1,119.44 |
| Apr 2022 | $559.74 | $0.00 | | $4,052.25 | $1,679.18 |
| May 2022 | $559.74 | $789.62 | ALLSTATE INSURANCE | $3,822.37 | $1,449.30 |
| Jun 2022 | $559.74 | $0.00 | | $4,382.11 | $2,009.04 |
| Jul 2022 | $559.74 | $0.00 | | $4,941.85 | $2,568.78 |
| Aug 2022 | $559.74 | $0.00 | | $5,501.59 | $3,128.52 |
| Sep 2022 | $559.74 | $0.00 | | $6,061.33 | $3,688.26 |
| Oct 2022 | $559.74 | $0.00 | | $6,621.07 | $4,248.00 |
| Nov 2022 | $559.74 | $2,963.61 | ORANGE COUNTY (W) | $4,217.20 | $1,844.13 |
| Dec 2022 | $559.74 | $0.00 | | $4,776.94 | $2,403.87 |
| Jan 2023 | $559.74 | $0.00 | | $5,336.68 | $2,963.61 |
| Feb 2023 | $559.74 | $0.00 | | $5,896.42 | $3,523.35 |
| Mar 2023 | $559.74 | $2,963.61 | ORANGE COUNTY (W) | $3,492.55 | $1,119.48 |
| Totals | $6,716.88 | $6,716.84 | | | |

## Part 4 - Escrow account history

Escrow account activity from June, 2021 to March, 2022

| Date | Deposits to escrow | | | Payments from escrow | | | Description | Escrow balance | | |
|------|--------|-----------|------------|--------|-----------|------------|-------------|--------|-----------|------------|
| | Actual | Projected | Difference | Actual | Projected | Difference | | Actual | Projected | Difference |
| Jun 2021 | | | | | | | Starting Balance | -$4,656.98 | $1,443.86 | -$6,100.84 |
| Jun 2021 | $585.81 | $556.17 | $29.64 | $0.00 | $0.00 | $0.00 | | -$4,071.17 | $2,000.03 | -$6,071.20 |
| Jul 2021 | $0.00 | $556.17 | -$556.17 | $0.00 | $0.00 | $0.00 | | -$4,071.17 | $2,556.20 | -$6,627.37 |
| Aug 2021 | $0.00 | $556.17 | -$556.17 | $0.00 | $0.00 | $0.00 | | -$4,071.17 | $3,112.37 | -$7,183.54 |
| Sep 2021 | $0.00 | $556.17 | -$556.17 | $0.00 | $0.00 | $0.00 | | -$4,071.17 | $3,668.54 | -$7,739.71 |
| Oct 2021 | $0.00 | $556.17 | -$556.17 | $0.00 | $0.00 | $0.00 | | -$4,071.17 | $4,224.71 | -$8,295.88 |
| Nov 2021 | $0.00 | $556.17 | -$556.17 | $2,963.61 | $2,946.61 | $17.00 | ORANGE COUNTY (W) | -$7,034.78 | $1,834.27 | -$8,869.05 |
| Dec 2021 | $11,822.39 | $556.17 | $11,266.22 | $0.00 | $0.00 | $0.00 | | $4,787.61 | $2,390.44 | $2,397.17 |
| Jan 2022 | $556.17 | $556.17 | $0.00 | $0.00 | $0.00 | $0.00 | | $5,343.78 | $2,946.61 | $2,397.17 |
| Feb 2022 | $556.17 | $556.17 | $0.00 | $0.00 | $0.00 | $0.00 | | $5,899.95 | $3,502.78 | $2,397.17 |
| Mar 2022 (estimate) | $556.17 | $556.17 | $0.00 | $2,963.61 | $2,946.61 | $17.00 | ORANGE COUNTY (W) | $3,492.51 | $1,112.34 | $2,380.17 |
| Totals | $14,076.71 | $5,561.70 | $8,515.01 | $5,927.22 | $5,893.22 | $34.00 | | | | |

Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A. ©2019 Wells Fargo Bank, N.A. All rights reserved. NMLSR ID 399801  9/19

